IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M. DENISE TOLLIVER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **Civil Action No. 17-1776-RGA** |
| | : Superior Court of the State of |
| DELMARVA FOUNDATION FOR | : Delaware in and for Kent County |
| MEDICAL CARE, | : Case No. K17C-11-010 NEP |
| | : |
| Defendant. | : |

M. Denise Tolliver, Camden, Delaware. Pro Se Plaintiff.

Joe P. Yeager, McCarter & English, LLP, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

July 28, 2020
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff M. Denise Tolliver, who appears *pro se*, filed this action in Delaware Superior Court on November 8, 2017. It was removed to this Court on December 8, 2017, by Defendant Delmarva Foundation for Medical Care. (D.I. 1). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332. Pending is Defendant's motion to dismiss the Second Amended Complaint and Plaintiff's motion to strike. (D.I. 72, 79). The motions have been fully briefed.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Court dismissed the original Complaint, and Plaintiff was given leave to amend against Defendant but only as to the claims in Count IV of the original complaint - the employment discrimination and retaliation claims. (D.I. 27, 28). All other claims and defendants were dismissed. Plaintiff filed an Amended Complaint. (D.I. 29). It, too, was dismissed, and Plaintiff was given one final opportunity to amend the employment discrimination and retaliation claims. (D.I. 65, 66). Plaintiff filed a Second Amended Complaint, which incorporates the original Complaint (D.I. 1-1) and Amended Complaint (D.I. 29). (*See* D.I. 67 at 1).

The Second Amended Complaint raises claims for violations of Title I and V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA")[1] for disability discrimination by withholding reasonable accommodations, retaliation, and violations of Federal

---

[1] I think Plaintiff refers to the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 Del. C. § 720, *et seq.*

1

Contractor Executive Order 11246. (D.I. 67 at 1-2).² Exhibits attached to the First Amended Complaint (D.I. 29) include an EEOC intake questionnaire dated October 21, 2014, emails, the October 21, 2014 charge of discrimination, and a notice of suit rights. Exhibits attached to the Second Amended Complaint (D.I. 67) include: (1) Defendant's EEOC position statement dated April 13, 2015 (D.I. 67-1 at 2); (2) April 2 and 7, 2014 emails regarding job descriptions and organizational charts (*id.* at 3); (3) EEOC enforcement guidance on retaliation and related issues (D.I. 68); (4) an email chain from May 9 to May 14, 2014 regarding a mandatory May 12, 2014 meeting and Plaintiff's concern for her safety (D.I. 69 at 2-4); and (5) Delmarva Foundation termination agreement and general release (*id.* at 5-8).³

The Second Amended Complaint contains two counts: Count I, failure to accommodate; and Count II, retaliation. (D.I. 67 at 4). Plaintiff alleges that Defendant terminated her employment because she had post-traumatic stress disorder ("PTSD") disability, and because she engaged in protected activity, and further that Defendant refused to consider relocating her to a different workplace location as a reasonable accommodation. (D.I. 67 at ¶ 10). Plaintiff alleges that she has a mental impairment, PTSD, that causes "her to be substantially limited in performing major life activities, including but not limited to certain manual tasks and cognitive function." (*Id.* at ¶ 2).

Plaintiff was hired by Defendant on October 7, 2013, as a project coordinator and on January 7, 2014 her position was changed to project supervisor. (D.I. 67 at ¶ 3).

---

² This is the first time Plaintiff has raised this claim.

³ A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

2

She was stationed at Defendant's Delaware City office. (*Id.*).  Plaintiff alleges that "weekly youth activities in the gym" at the Delaware City building subjected her "to mental injury and constant threat of physical injury." (*Id.* at ¶ 4).  On January 10, 2014, Plaintiff witnessed an employee's "slip and fall" and reported the workplace injury to Defendant due to the project manager's absence. (D.I. 29 at 4; D.I. 67 at ¶ 5).

On February 18, 2014, Plaintiff submitted a request to human resources for a reasonable accommodation "mostly responsive to being regularly accosted by the Project Manager."[4]  (D.I. 29 at 5; D.I. 67 at ¶ 6; D.I. 67-1 at 2).  Plaintiff alleges that she suffered a workplace injury on March 22, 2014, filed a workers' compensation incident report and, because of her worsening health, requested a workplace relocation. (D.I. 29 at 9; D.I. 67 at ¶ 7).  Plaintiff alleges that the conditions at the Delaware City office, "both real and perceived intensified as being more and more injurious," and exacerbated Plaintiff's PTSD disability. (*Id.* at ¶ 8).  Plaintiff alleges that on March 25, 2014, she participated in a telephone conference and discussed, among other things, workers' compensation and ADA accommodations. (D.I. 29 at 5).

On May 9, 2014, Plaintiff was notified via email of a mandatory May 12, 2014 meeting to discuss updates regarding the Delaware project. (D.I. 69 at 3-4).  The same day Plaintiff expressed concerns about the safety of the meeting location. (*Id.* at 2-3).  On May 12, 2014, Plaintiff was either laid off or her employment was terminated. (D.I. 29-2 at 2).[5]  Defendant's termination agreement and general release states that

---

[4] Plaintiff's EEOC intake questionnaire states the request was made February 5, 2014, not February 18, 2014.  (*See* D.I. 29-1 at 4 (Question 12) ).

[5] The Charge of Discrimination asserts both. (D.I. 29-2 at 2).

3

Plaintiff's "employment will terminate effective May 12, 2014." (D.I. 69 at 5). Plaintiff alleges that on the day she was terminated a Kent County lead position became available after James Prim, the person holding the position, quit in protest of the contract firings. (D.I. 29 at 5). Plaintiff alleges that on May 22, 2014, her request for reinstatement to complete her contract at Kent County was denied while the Kent County lead position remained opened.[6] (D.I. 29 at 5).

Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief may be granted on the grounds that: (1) the failure to accommodate claim does not state how Defendant's alleged failure to accommodate impacted Plaintiff's ability to perform her job; (2) Plaintiff fails to allege how she was retaliated against for requesting a reasonable accommodation; and (3) there is no private right of action under Executive Order 11246. (D.I. 72, 73).

Plaintiff opposes the motion and, it appears, served two separate oppositions upon Defendant. (See D.I. 77; D.I. 78-1). One – D.I. 77 – was filed with the Court.[7] The other – D.I. 78-1 – is attached to Defendant's reply brief as Exhibit A. Defendant's reply references both. (D.I. 78). Plaintiff moves to strike Defendant's Exhibit A (D.I. 78-1) because she did not file it with the Court. (D.I. 79, D.I. 81). I will grant the motion to strike and will not consider Exhibit A or Defendant's argument in response to Exhibit A.

The motion to strike also moves to affirm "DDEA claims." The Court will dismiss

---

[6] In the Second Amended Complaint, Plaintiff alleges that she requested to be reinstated from "reduction in force" to work at Defendant's Kent County office and that her request was denied. (D.I. 67 at ¶ 9).

[7] In support of her position Plaintiff also filed copies of 29 U.S.C. § 1630.2(5)(i) and (v); 29 U.S.C. § 1630.2(2)(ii); Executive Order 11246; and additional information regarding Executive Order 11246. (See D.I. 74, 75, 76).

4

as moot that portion of the motion in light of its determination that the Second Amended Complaint attempts to raise disability discrimination claims under federal and state law, the state law being DPDEPA rather than DDEA.

## II.     LEGAL STANDARDS

Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 545. Factual allegations do not have to be detailed, but must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id*. ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.").

Moreover, there must be enough factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III. DISCUSSION

The Second Amended Complaint specifically incorporates the original Complaint and the Amended Complaint. (*See* D.I. 67 at 1). In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir 2017). I will consider the allegations because Plaintiff specifically referred to or adopted the Complaint and Amended Complaint in the Second Amended Complaint, but only as to the accommodation and retaliation claims. *See id.* at 220 n.12.

The Court liberally construes the Second Amended Complaint as raising claims under the DPDEPA and the ADA. A claim for employment discrimination based upon disability discrimination and retaliation may be raised under the DPDEPA, 19 Del. C. § 724(a)(2) and § 726. Delaware's employment discrimination laws are substantially the same as their federal counterparts, and it is appropriate to apply federal case law to discrimination claims raised under the DDEA or DPDEPA. *See Gary v. R.C. Fabricators, Inc.*, 2014 WL 4181479, at *19 (Del. Super. July 30, 2014).

### A. Reasonable Accommodation

Defendant moves to dismiss the failure to accommodate claim on the grounds that Plaintiff failed to cure her pleading defects. In doing so, Defendant refers to the Court's instructions that Plaintiff must at a minimum state, "what the disability was, what accommodation was sought, what accommodation was not given, and how that impacted her ability to perform her job." (D.I. 65 at 8).

To state a claim for disability discrimination, Plaintiff must establish that she:

6

(1) has a disability under the DPDEPA or the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she suffered an adverse employment action as a result of discrimination, including her employer's refusal to make a reasonable accommodation for her disability.  *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009).

To qualify as "a person with a disability" under the DPDEPA or the ADA, the claimant must show that she: "(a) has a physical or mental impairment which substantially limits one or more major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment."  19 Del. C. § 722(4); *see* 42 U.S.C. § 12102(2)(A)-(C); *see also Miller v. Aramark Healthcare Support Services*, 555 F. Supp. 2d 463, 472 (D. Del. 2008). Under the ADA, a plaintiff is a "qualified individual" if, with or without reasonable accommodation, she can "perform the essential functions of the employment position."  42 U.S.C. § 12111(8).

Once an employee requests a reasonable accommodation, her employer must assist the employee in seeking accommodations through a "flexible, interactive process," *Hohider*, 574 F.3d at 187, and both employers and employees "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith," *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999).  Initiating the process requires that the employer first be put on notice of a disability and request for accommodation. *Ruggiero v. Mount Nittany Med. Ctr.,* 736 F. App'x 35, 39 (3d Cir. 2018).  Adequate notice simply requires that an employee "provide[ ] the employer with enough information that, under the circumstances, the employer can be fairly said to

7

know of both the disability and desire for an accommodation." *Taylor*, 184 F.3d at 313. An employee's request for accommodation that comes shortly after termination requires the employer to engage in the interactive process. *See Linton v. L'Oreal USA*, 2009 WL 838766, at *8 (D.N.J. 2009) (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1287 (7th Cir. 1996)).

As alleged, Plaintiff made one request for a workplace accommodation, and two requests for a workplace relocation. One relocation request was made ten days after Plaintiff's employment was terminated.

Plaintiff submitted a request to human resources for a reasonable accommodation on February 18, 2014. To the extent Plaintiff raises an accommodation claim as to that request, the allegations fail to state a claim upon which relief may be granted. According to the exhibits attached to the Second Amended Complaint, Plaintiff requested accommodations that were outlined by her therapist in a written statement. (D.I. 67-1 at 2). The submission goes on to say, "All of the reasonable requests in that letter were implemented."[8] Further, Defendant attempted to meet even the requests that "were well beyond what would be considered a reasonable accommodation." (*Id.*). Thus, the only factual allegations about the February request contradict Plaintiff's claim that Defendant repeatedly refused to provide a reasonable accommodation. Plaintiff has not met the pleading requirements of a failure to accommodate claim as to the February 2014 request.

---

[8] On her EEOC intake questionnaire, Plaintiff's description was that the employer responded to her request: "Accommodations plan accepted." (D.I. 29-1 at 4 (question 12)).

Plaintiff further alleges that she suffered a workplace injury on March 22, 2014, filed a workers' compensation incident report and, because of her worsening health, requested a workplace relocation in March 2014. The allegations are not clear, and it appears the relocation request was made in response to Plaintiff's workplace injury, not her PTSD condition. Plaintiff also alleges that on March 25, 2014, she participated in a telephone conference and discussed worker's compensation and ADA accommodations, but does not allege that she made any request for an accommodation. She then alleges that her requests to relocate were denied on an unidentified date. Plaintiff alleges that the conditions at the Delaware City office exacerbated her PTSD, but she provides no dates. Finally, Plaintiff alleges that on May 22, 2014, after her May 12, 2014 termination, she requested, and was denied, reinstatement to complete her contract at Defendant's Kent County location even though the Kent County lead position remained opened.

Defendant acknowledges that Plaintiff alleges a disability (*i.e.*, PTSD). Defendant argues, however that Plaintiff does not allege how Defendant's failure to accommodate the requested change in work location impacted her ability to perform her job.

In opposing dismissal, Plaintiff argues that Defendant was informed of her need for an accommodation due to a disability as a result of the February 18, 2014 request and accommodations it implemented.[9] She argues that she requested relocation in

---

[9] Plaintiff's responses and exhibits include new allegations that are not contained in the Second Amended Complaint. Plaintiff may not amend her Second Amended Complaint through her opposition brief, and these new facts may not be considered by the Court on the instant motion to dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988).

9

March 2014 due to adverse conditions exacerbating PTSD symptoms, but the allegations do not square with Plaintiff's argument. The allegations speak to a workplace injury, with no reference to an accommodation for Plaintiff's PTSD. (*See* D.I. 29 at 5 ["On March 22, 2014, I was physically injured at work requiring medical treatment and reported the incident to human resources. . . . On March 25, 2014, I participated in a telephone conference . . . whereby we discussed among other things workers' compensation and ADA accommodations. My requests for medical expense reimbursement and to relocate my workplace to the Kent County office were denied."]; D.I. 69 at ¶ 7 ["March 2014 Plaintiff was injured at work whereby Plaintiff filed a worker's compensation incident report and because of her worsening health requested workplace relocation with Defendant."]).

Plaintiff also argues that an April 14 letter discussing pay concerns (D.I. 67-1 at 3), and a May 9, 2014 email that requested information specific to her role and responsibilities at a May 12, 2014 meeting and expressing safety concerns (D.I. 69 at 3), support her position that Defendant was informed of Plaintiff's need for an accommodation. The referenced documents, however, do not speak to any disability, request an accommodation, or request a workplace transfer based upon a disability.

Finally, Plaintiff argues that Defendant failed to provide a reasonable accommodation when it refused to relocate her to the position left vacant due to the resignation of James Prim at the Kent County office.

Defendant argues that the alleged March 2014 accommodation request for a transfer to Kent County is factually insupportable. (D.I. 78 at 4). Defendant refers to Plaintiff's allegations that the lead position did not become vacant until May 12, 2014,

when Prim, who held the position, quit in protest, yet Plaintiff alleges that she made the request some two months prior to position becoming vacant. In response, Plaintiff filed a declaration that she was aware of a lead position opening before Prim vacated his position, but does not say when she gained this knowledge. (D.I. 80 at ¶ 3). The declaration is not considered. As noted, see n. 9 supra, Plaintiff may not amend the Second Amended Complaint through her opposition or extraneous materials, documents, and/or declarations that were not attached to the Second Amended Complaint.

With regard to the transfer claim, Plaintiff has failed to satisfy the pleading standards for an accommodation claim under the ADA. While the facts plausibly suggest Defendant knew of Plaintiff's disability, they do not plausibly suggest that Defendant knew that Plaintiff's disability was the reason she requested a transfer from the Delaware City Office. As pled, it seems the reason for the request was due to a work-related injury. Nor, as pled, is it plausible that Plaintiff made a request in March for a position that did not become vacant until May and only because Prim resigned his position in protest of second year contract firings.

Finally, the Second Amended Complaint does not allege that Plaintiff's PTSD interfered with her ability to perform her job. Plaintiff alleges no facts regarding her work performance and the quality of her work and does not allege that her impairment did, or did not, interfere with her ability to perform the job. Instead, she alleges in a conclusory manner that she was able to perform the functions of her job as project supervisor without or without a reasonable accommodation. Plaintiff alleges that Defendant refused to transfer her to the Kent County office to fill a vacant "lead" position. Notably,

11

Plaintiff alleges that she held the position of project supervisor, not the lead position, and there are no allegations that she was qualified for the lead position at the Kent County office.  Thus, Plaintiff has failed to allege a plausible entitlement to relief as to the failure to accommodate claim.

Finally, the Court would be remiss if it did not address the issue of exhaustion of administrative remedies.  Before an employee may proceed with an employment discrimination suit under the ADA, the employee must exhaust her administrative remedies by filing a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC").  See 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA).  "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Williams v. East Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) (quoting *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996) (internal quotations omitted)).

In examining Plaintiff's allegations, the Court carefully reviewed her EEOC intake questionnaire as well as her charge of discrimination.  (D.I. 29-1 at 2-5; D.I. 29-2 at 2).  While both refer to Plaintiff's February 2014 request for an accommodation and that Plaintiff's accommodation plan had been accepted, neither refer to the alleged March and May 2014 accommodation requests seeking a transfer to a different workplace as alleged by Plaintiff in the Second Amended Complaint.  The pleadings indicate that Plaintiff did not exhaust her administrative remedies on the accommodation claim seeking a transfer.

Accordingly, the March and May 2014 accommodation request claims will be dismissed without prejudice. *See Fernandez v. Rose Trucking*, 429 F. App'x 145 (3d Cir. 2011) (affirming the district court's *sua sponte* dismissal of plaintiff's ADA claim for failure to exhaust administrative remedies); *Phillips v. Sheraton Hill Soc'y*, 163 F. App'x 93 (3d Cir. 2005) (noting that a district court may *sua sponte* dismiss an ADA claim for failure to exhaust so long as the claim is dismissed without prejudice).

For these reasons, the Court will grant Defendant's motion to dismiss with prejudice the February 2014 accommodation request claim and will *sua sponte* dismiss without prejudice the March and May 2014 accommodation claim seeking a transfer as those claims have not been administratively exhausted.[10]

## B. Retaliation

Defendant moves to dismiss the retaliation claim on the grounds that it is factually deficient, is an impermissible attempt to bootstrap the reasonable accommodation claim into a retaliation claim, and does not include how Plaintiff was retaliated against for requesting a reasonable accommodation. (D.I. 73 at 8).

Retaliation is prohibited by the DPDEPA and the ADA. *See* 19 Del. C. § 726; 42 U.S.C. § 12203(a). To state a retaliation claim, Plaintiff must allege: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American*

---

[10] I dismiss with prejudice because Plaintiff has had two opportunities to re-plead this claim. (D.I. 29, 67). The last time I gave her the opportunity, I specified the four things she needed to plead to successfully state a claim. (D.I. 65 at 8). She has only done one out of the four of them. I also advised her that it would be her last opportunity. (*Id.*). I think permitting another opportunity would be futile.

13

*Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); s*ee Wagenhoffer v. Visionquest Nat'l Ltd.*, 2016 WL 3947952, at *7 (Del. Super. July 14, 2016) (setting forth elements for case of retaliation under the DDEA).

The Second Amended Complaint alleges that Defendant terminated Plaintiff's employment as a consequence of engaging in protected activity. The Second Amended Complaint alleges that Plaintiff engaged in protected activity on February 18, 2014, when she submitted a request to human resources for reasonable accommodations. The Second Amended Complaint seems to allege another protected activity when Plaintiff participated in a March 25, 2014 telephone conference, and discussed worker's compensation and ADA accommodations, although she does not allege that she made any request during the conference call. Plaintiff's employment ended on May 12, 2014 and ten days later, on May 22, 2014, she requested reinstatement to work at Defendant's Kent County location. The request was denied.

As Defendant observes, the Second Amended Complaint intermingles Plaintiff's retaliation claim with her accommodation claim. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1288 (11th Cir. 1997) (at summary judgment, refusing to address "retaliation" claims that were based on simple refusals to accommodate Plaintiff because those acts "relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim"); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (at summary judgment, rejecting retaliation claim based on a failure to reasonably accommodate because it "merely reclothes [the] ADA discrimination claim"); *Daley v. Cablevision Sys. Corp.*, 2016 WL 880203, at *7 (S.D.N.Y. Mar. 7, 2016) (at summary judgment, "though requesting a

reasonable accommodation of a disability is an ADA-protected activity, any activity comprising Plaintiff's failure-to-accommodate claim cannot also constitute protected activity such as that required to form the basis of a retaliation claim.") (cleaned up). *Missick v. City of New York*, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010) (at summary judgment, "Defendants' alleged failure to accommodate Plaintiff's disability subsequent to an ADA protected request cannot be bootstrapped into a viable disability retaliation claim.) (cleaned up). The Court is not inclined, however, to dismiss the retaliation claim on this basis alone, particularly at this early stage of the case.

Regardless, Plaintiff fails to state a retaliation claim. If the retaliation claim rests upon Plaintiff's February 2014 request for accommodation, she points to no adverse action. Rather, the allegations and exhibits indicate that Defendant reacted favorably to her request and provided an accommodation. Moreover, if Plaintiff is alleging she was terminated in May 2014 as a result of the February 2014 request, the three month period is not unusually suggestive of retaliatory motive. *See Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 136 (3d Cir 2014) (determining that a three month period between complaint and termination is not unusually suggestive of retaliatory motive).

If the retaliation claim rests upon the March 25, 2014 telephone call, the claim lacks supporting facts, particularly how Defendant retaliated against Plaintiff for discussing the ADA.[11] If the retaliation claim rests upon her May 22, 2014 request for

---

[11] The Court further observes that it does not appear that Plaintiff exhausted the retaliation claim and thus, dismissal without prejudice is appropriate. Plaintiff's EEOC intake questionnaire states that Plaintiff was discharged or laid off in retaliation for filing a worker's compensation claim on March 22, 2014, not for seeking reasonable accommodations. The Charge of Discrimination does not assert retaliation.

15

reinstatement and request for a transfer following the termination of her employment, Plaintiff's request was made after her dismissal making it impossible for the alleged protected activity to be causally connected to the termination of employment that occurred ten days earlier.

The retaliation claim is deficiently pled for the reasons discussed. The Second Amended Complaint does not plausibly allege a causal connection between some protected activity and either the denial of a transfer to the Kent County office or Plaintiff's termination. Defendant's motion to dismiss the retaliation claim as to the February 2014 protected activity and May 2014 alleged protected activity will be granted with prejudice[12] and the remaining retaliation claim will be dismissed *sua sponte* without prejudice for failure to exhaust administrative remedies.

### C.  Executive Order 11246

Defendant seeks dismissal of Plaintiff's claim under Executive Order 11246, raised for the first time in the Second Amended Complaint. Executive Order 11246 contemplates enforcement by the government only. *See Droughn v. FMC Corp.*, 74 F.R.D. 639, 644 (E.D. Pa. 1977). Courts have consistently held that there is no private right of action under this executive order. *See Boyd v. Jacobs Project Mgmt. Co.*, 740 F. App'x 99, 101 (7th Cir. 2018); *Thomas v. Choctaw Mgmt./Services Enterprise*, 313 F.3d 910 n.8 (5th Cir. 2002); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C. Cir. 1990); *Utley v. Varian, Associates, Inc.*, 811 F.2d 1279, 1286 (9th Cir.

---

[12] Plaintiff has stated what her theories are, and they do not state a claim. I do not think that permitting her another opportunity will lead to any different result. The February protected activity is too remote from the supposed retaliation, and the May 2014 occurred after the supposed retaliation. Permitting further amendment would be futile.

16

1987); *Eatmon v. Briston Steel & Iron Works, Inc.*, 769 F.2d 1503, 1515 (11th Cir. 1985); *Droughn*, 74 F.R.D. at 644. The claim fails as a matter of law.

Accordingly, the Court will grant Defendant's motion to dismiss this claim.

## IV. CONCLUSION

For the above reasons, the Court will: (1) *sua sponte* dismiss without prejudice those claims that Plaintiff failed to administratively exhaust including the March and May 2014 accommodation claims and the retaliation claim based upon the alleged protected activity that took place in March 2014; (2) grant Defendant's motion to dismiss with prejudice as to all other claims (D.I. 72); and (3) grant in part and dismiss as moot in part Plaintiff's motion to strike (D.I. 79).

An appropriate Order will be entered.